## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

UNITED STATES OF AMERICA,               :

                      Plaintiff,               :          Case No. 1:15-CR-00018

      vs.               :          JUDGE DLOTT

DAVID GUY,               :

                      Defendant.               :

### DEFENDANT'S SENTENCING MEMORANDUM

Now comes Mr. David Guy, by and through counsel, and hereby submits this sentencing memorandum for the Court's consideration at sentencing.

### I.      Mr. Guy Submits that the Facts of His Case Warrant a Sentence Substantially Below the Advisory Guideline Range.

David Guy is scheduled to be sentenced on June 30, 2016 after being convicted at trial of eleven counts of obscenity, one count of the attempted production of child pornography, three counts of receipt of child pornography, and one count of possession of child pornography. Based on his advisory guideline range, Mr. Guy is facing a potential life sentence.[1] In the Presentence Investigation Report (hereinafter, PSR), probation has recommended a sentence of 45-years imprisonment followed by 20-years of supervised release. Despite probation's recommendation, for the reasons that follow, Mr. Guy requests a substantial downward deviation from the advisory

---

[1] Mr. Guy made a legal objection to the calculation of his advisory guideline range and incorporates said objection herein. See, Defense Objection Letter (attached to Final PSR). Mr. Guy acknowledges, however, that this objection does not ultimately change the calculation of his range, as any offense level over 43 results in a recommended sentence of life imprisonment. Additionally, Mr. Guy renews the factual and legal objections he raised in his pro se filings related to the PSR.

guideline range, or 180 months' imprisonment.  He respectfully submits that such a sentence will best effectuate the sentencing goals outlined in 18 U.S.C. § 3553(a), namely accomplishing just punishment, protecting the public, providing both specific and general deterrence, and providing treatment and rehabilitation in the most effective manner.

**II.     Overall, the Nature and Circumstances of Mr. Guy's Offense and his History and Characteristics Do Not Warrant a Life Sentence or the Functional Equivalent of a Life Sentence.[2]**

On the date of sentencing Mr. Guy will stand before this Court a 62 year old man with no prior convictions.[3]  This prison term, in addition to the one he was ordered to serve by the State of Ohio, will be the first, and likely only, time he will spend incarcerated, given his current age. Indeed, if the Court chooses to impose the mandatory minimum sentence of 180 months, Mr. Guy will be approaching eighty-years-old by the time he is released.  In light of Mr. Guy's age, any sentence, including the mandatory minimum, will in all likelihood outlast his life.  For while a healthy male might expect to live until 76 years old on the outside, *life expectancy for a healthy inmate* is significantly less.  Huffington Post, *U.S. Life Expectancy Ranks 26th in the World, OECD Report Shows*, November 21, 2013, http://www.huffingtonpost.com/2013/11/21/us-life-expectancy-oecd_n_4317367.html (last visited June 9, 2016).

The average life expectancy for healthy federal inmates is 64 years old, and the Sentencing Commission has accordingly defined a life sentence for the average 25 year old male defendant to be 470 months (39 years, 2 months).  *See Michigan Life Expectancy Data for Youth Serving*

---

[2] The arguments raised herein are based on the jury's finding of guilt on all charges.  While Mr. Guy, to date, maintains his innocence, he recognizes that this Court must sentence him based upon the jury's conclusions at trial.  Undersigned counsel has therefore analyzed the sentencing factors in light of the jury's conclusions regarding Mr. Guy's offense conduct.

[3] While Mr. Guy has a state conviction out of Clermont County, that particular offense is relevant conduct to this offense and therefore is considered part of the instant offense.  (PSR, ¶164).

*Natural Life Sentences*, Deborah LaBelle, ACLU of Michigan Juvenile Life without Parole Initiatve ((http://fairsentencingofyouth.org/wp-content/uploads/2010/02/Michigan-Life-Expectancy-Data-Youth-Serving-Life.pdf) (citing United States v. Nelson, 491 F.3d 344, 349-50 (7th Cir. 2012)) (last visited June 9, 2016). Mr. Guy is significantly older than the average defendant (62 years old versus 25 years old) and according to the reports is actually only two years shy of meeting an untimely death. Moreoever, at sentencing, Mr. Guy will have been been incarcerated a total of 650 days (or 1 year, 9 months, and 11 days). (PSR, ¶164). Thus, the effects of incarceration on his life expectancy have undoubtedly already begun. Accordingly, it is clear that any sentence this Court imposes – including the mandatory minimum, is in fact a life sentence.

Thus, a 180 month sentence is, in practical effect, no different in result from the 45-year sentence recommended in the PSR. The 180 month sentence, however, is sufficient but not greater than necessary to meet the statutory factors listed above.

In arriving at the conclusion that Mr. Guy's case warrants a sentence to the statutory mandatory minimum, this Court must closely analyze the facts that the government proved at trial. Mr. Guy created a series of images where the heads of known minor children were placed on the bodies of unknown individuals. The unknown individuals' bodies were displayed in various states of undress and some of them were engaged in sexual activity. Since the unknown individuals were never identified, the government could not prove if the persons depicted were minors, adults, or even real people. The government's evidence was therefore limited to showing that the heads were known children and the bodies were taken from images Mr. Guy had downloaded from the internet. Thus, Mr. Guy never created any of the "sexually explicit" portions of the images. Rather his works were "photoshopped" creations, wherein one image was spliced with another. Importantly, prior to the investigation of the instant offense and the resultant trial, no one had ever seen the

3

images that Mr. Guy created, as the government's forensic investigation revealed no distribution on Mr. Guy's part.

In addition to creating the photoshopped images, Mr. Guy was convicted of the *attempted* production of child pornography.  The image relied upon by the government in support of this charge was Government's Exhibit 12.1.  As conceded by the government, that image did not meet the legal definition of child pornography, since no sex act was displayed and the child's genitals were not exposed (hence the reason the government proceeded with the charge of attempted production instead of production).  Moreover, the child was completely dressed, with only the side of her bare bottom exposed.  In fact, of the 25,000 images recovered by the government – that, according to their expert depicted "child pornography" – not a single image of a naked child *taken by Mr. Guy* was found.

Notably, the same minor depicted in Government's Exhibit 12.1 was shown in Government's Exhibit 1.1 as part of the first obscenity charge.  Exhibit 1.1 – the only image that actually displayed one of the known minor's "genitals" – was actually an altered image, or photoshopped.  According to Richard Quindry, an expert in digitally enhanced photography, the vagina shown in that image was not part of the original image and had been photoshopped into the picture.  Thus, based on the government's own evidence, it is clear that Mr. Guy actually went to great lengths not to photograph or produce images of nude children.

Finally, Mr. Guy was convicted of the receipt and possession of child pornography.  While certainly serious crimes in and of themselves, there is nothing particularly aggravating about the images Mr. Guy possessed that would take his offense outside of a run-of-the-mill receipt or possession case.  In fact, to his credit, unlike a lot of other persons convicted of child pornography offenses, Mr. Guy did not distribute or share any of the images he received and possessed.

In summarizing the facts of Mr. Guy's case, undersigned counsel in no way means to minimize the seriousness of his offense. That being said, these facts are highlighted to show that the nature and circumstances here are certainly not the "worst of the worst."[4]

Indeed, in the case of *United States v. Secrest*, 2012 U.S. Dist. LEXIS 183920 (E.D.N.C. 2012), the defendant pled guilty to transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1). Her total offense level was 43 and her criminal history category was I, which resulted in a life imprisonment guideline range (or 240 months, based on the statutory maximum). At sentencing, she received a downward variance to 108 months' imprisonment, despite the fact that the minor, who was entirely nude during the child pornography incident, suffered severe physical abuse at the hands of her mother in front of a webcam.

In *Secrest*, the facts present a mother engaged with a man in an instant message internet conversation. She directed her child to remove all of her clothes and stand in front of the webcam, where she then proceeded to beat her child with a wooden spoon and only stopped when she noticed she was bleeding. The victim was then made to stand in front of the camera with her buttocks turned toward the camera while her mother went to bed. Digital evidence taken after the fact showed deep bruising on both sides of the victim's buttocks. Despite these horrendous facts, the sentencing Court found it appropriate to sentence the defendant well below the recommended advisory guideline range.

---

[4] Mr. Guy acknowledges that while not part of the government's evidence presented at trial, the Court must also consider his conviction for gross sexual imposition in the State of Ohio as part of this offense, as it is relevant conduct. Moreover, it involves the same minor who is the subject of Counts One and Twelve in the Third Superseding Indictment. That conduct occurred some 9 to 13 years ago and was the factor that motivated the investigation in the instant federal offense. Notably, subsequent to the minor's report of the contact offense, the police did a thorough investigation of any other potential contact offenses with other family members. Importantly, no other contact offenses were found. While obviously the Court is at liberty to consider Mr. Guy's prior conviction, it should be noted that the state has already seen fit to punish Mr. Guy for that offense and imposed the statutory maximum penalty of five years' imprisonment. (PSR, ¶164).

Similarly, in *United States v. Taylor*, 442 Fed. Appx. 215 (6th Cir. 2011), the Sixth Circuit upheld a sentence to 360 months imprisonment as being both procedurally and substantively reasonable. In *Taylor*, the defendant pled guilty to two counts of production of child pornography and one count of possession of child pornography, although he was originally charged with three counts of production of child pornography, two counts of transportation of child pornography, and one count of possession of child pornography. The defendant in *Taylor* was calculated to have an advisory guideline range of 324 to 405 months' imprisonment, based on a total offense level 41 and a criminal history category I.[5]

The facts underlying *Taylor* showed the defendant sending "two sexually explicit images of himself and his four-year-old son to another individual, including one in which his four-year-old son was performing oral sex on [him]." *Id.* at 216. Additional images were found that showed the rape of the four-year-old by the defendant and the repeated sexual assault of his other nine-year-old son. *Id.* Moreover, 477 images of child pornography and two videos containing child pornography were confiscated. *Id.*

Ultimately, the defendant was sentenced to 360 months' imprisonment on each production count and 120 months' imprisonment on the possession count, with all terms to run concurrently. Thus, the defendant in *Taylor*, while ultimately receiving a guideline sentence, received below the top end of his recommended range for conduct that far exceeded what Mr. Guy was convicted of doing in this case.

Importantly, Mr. Guy highlights these cases not to excuse or justify his conduct in this offense, but rather to contextualize his actions in light of other offenders who have been sentenced

---

[5] Notably, had the defendant in *Taylor* been convicted at trial, his advisory guideline range would have been life imprisonment.

for similar charges.  If a mother who physically abuses her child for the voyeuristic pleasure of another adult male can receive a sentence of 9 years, and a father who rapes his two children, films the incidents, and then distributes the images online can receive 30 years, surely Mr. Guy's case warrants a substantial downward deviation.  As shown *supra*, any sentence the Court chooses to impose – including the mandatory minimum of 180 months – will be a life sentence given Mr. Guy's present age.  Thus, when juxtaposing his age with the mitigating aspects of his offense conduct, a substantial downward variance is the sentence that is sufficient but not greater than necessary.  Such a sentence will provide just punishment for the conduct that occurred here and will certainly serve to protect the public.

III.    **Studies by Renowned Psychiatrists Suggest that a Sentence Substantially Below the Advisory Guideline Range would be Most Appropriate to Address the Rehabilitative Needs seen in Mr. Guy's Case.[6]**

The mitigating aspects of the nature and circumstances of the offense are also an important indicator of the likelihood that Mr. Guy will not reoffend in the future.  In addition to general statistics which show that offenders older than 60 years old have the lowest recidivism rate, at only 16%[7], Mr. Guy's risk of a future contact offense seems virtually obsolete.

Renowned American psychiatrist and sexologist specializing in sex offenses, Frederick S. Berlin, has done extensive studies on sexually disordered sexual offenders including those with pedophilia.  He describes pedophilic orientation as persons attached to prepubescent males or females, depending on their preference.  *See* Defense Exhibit A: *Pedophilia and DSM-5: The*

---

[6] The arguments set forth in this subsection are, once again, based upon the conclusions that the jury drew in arriving at its guilty verdict.  They are asserted based on undersigned counsel's consideration of the facts of this case and the studies that exist around others similarly situated.  They are not meant to negate Mr. Guy's assertions of innocence.

[7] *See* United States Sentencing Commission, *Recidivism Among Federal Offenders, A Comprehensive Overview*, http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf at page 23 (last visited June 9, 2016).

*Importance of Clearly Defining the Nature of a Pedophilic Disorder*, Fred. S. Berlin, J Am Acad Psychiatry Law 42:404-7, 2014, (page 1).   Through his studies, he has shown that pedophilia, when freed of its societal stigma and properly diagnosed, can actually be treated with specifically tailored psychiatric and mental health treatment.  *Id.* (page 4).  Importantly, he distinguishes between individuals who experience urges to view child pornography from those who experience urges to act on an attraction to a child, and even highlights one's personal experience of looking at pictures to avoid having sex with a child.  *Id.* (pages 1 and 4).  As that person stated, "I look at pictures all the time.  That helps me to deal with my desires without actually going out and having sex with a young child…." *Id.* (page 4).

Obviously, given the prior admitted contact offense in Mr. Guy's history, Mr. Guy appears to fall in a middle ground between a contact offender and mere viewer of child pornography. Concededly, Mr. Guy cannot be a mere viewer of child pornography since he has a prior contact offense.  However, that being said, the time that has passed since that conduct (i.e., 9 to 13 years), when coupled with the fact that no additional contact offenses occurred, seem to indicate that Mr. Guy has found a way to control those urges.  The government's extensive and thorough investigation of this case shows that Mr. Guy's conduct over the last decade plus has been limited to downloading and viewing child pornography.  Thus, like the person who looked at pictures to control his urges and desires, Mr. Guy appears to have found a similar mechanism to temper his risk to the public.  This is particularly important given the ample access and opportunity he had to potentially reoffend.  (PSR, ¶ 45).

Moreover, in a study conducted on a population involving men who had accessed child pornography and had one prior conviction for a hands-on sexual offense, only 0.8% (i.e., 2 out of 231 men) went on to recidivate by committing a subsequent hands-on offense in a 6 year follow-

up period. *See* Defense Exhibit B: *Internet Child Pornography: Consequences and Who is Accessing It*, Fred S. Berlin and Denise Sawyer, Sexual Addiction and Compatability, 13:30-40, 2012 (page 39 of the article). Therefore, it would again appear that Mr. Guy, who has managed to avoid any subsequent hands-on offense in over a decade since his prior contact offense, has already shown that he will not be one of the 0.8% to recidivate in the future.

In light of all of these facts, Mr. Guy submits that in lieu of a lengthier term of imprisonment, a more appropriate approach would be to impose a sentence substantially below the advisory guideline range and tailor his conditions of supervised release to include proper mental health treatment.

As Judge O'Malley keenly observed in sentencing a defendant for possession of child pornography:

> Respect for the law is promoted by punishments that are **fair** [emphasis supplied]… not those that simply punish for punishment's sake. A sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing (citing *Gall v. United States*, 128 S. Ct. 586 at 599 (2007)). There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves harsh punishment receives a slap on the wrist.

*U.S. v. Stern*, 590 F. Supp. 2d 945, 956 (N.D. Ohio 2008). Clearly, if the evidence produced at trial is to be believed, Mr. Guy is need of more than just punishment. His actions reflect an acute need for psychiatric intervention and treatment, which cannot possibly be accomplished most effectively through incarceration. *Tapia v. United States*, 564 U.S. 319, 335 (2011). Thus, a fair sentence in this case – that will ultimately promote respect for the law – is a sentence substantially

below the advisory guideline range.  The requested sentence of 180 months' imprisonment is the

appropriate means of accomplishing the sentencing goals of protection of the public, providing

both specific and general deterrence, and meeting the particular treatment needs attendant to this

case.

IV.     **Mr. Guy, Despite the Seriousness of his Offense, Deserves a Sentence that Can Provide a Glimmer of Hope for his Future.**

Meting out punishment in a child pornography case is never an easy task, as it involves the

careful balancing of interests outside of the defendant's.  While Mr. Guy's case is serious, there

are several factors under 18 U.S.C. § 3553(a) that warrant a sentence substantially below the

advisory guideline range.  Even if this Court chooses to impose the mandatory minimum sentence

for production of child pornography, Mr. Guy will be facing a 15 year term of imprisonment –

hardly a slap on the wrist for an individual who, prior to this offense, had never spent a single day

in jail.

When fashioning the sentence that will be ultimately be imposed here, Mr. Guy would

encourage this Court to think about the judges who have refused to impose the Draconian sentences

that the guidelines call for in child pornography cases.  As one federal judge concluded, when

considering these penalties, the penalties are, put simply, "'cruel and unusual' and therefore

unconstitutional." Defense Exhibit B (page 39 of the article).  In this case, the sentence probation

has asked for certainly constitutes cruel and unusual and punishment.

In the end, for a man who, in all likelihood, will spend his remaining days in a federal

institution, the mitigating facts that exist in this case not only warrant but justify a sentence that

can provide even the smallest glimmer of hope for his future.   Therefore, for all of the

aforementioned reasons, Mr. Guy requests that this Court impose a sentence substantially below

the advisory guideline range, or 180 months' imprisonment.[8]


Respectfully Submitted,

DEBORAH L. WILLIAMS
FEDERAL PUBLIC DEFENDER

/s/   Zenaida R. Lockard and Karen Savir
Zenaida R. Lockard  (KY Bar No. 93402)
Karen Savir (KY Bar No. 92002)
Assistant Federal Public Defenders
250 East Fifth Street, Suite 350
Cincinnati, Ohio 45202
Telephone: (513) 929-4834
Zenaida_Lockard@fd.org

Attorney for Defendant
David Guy


## CERTIFICATE OF SERVICE

I certify that the foregoing document was electronically served upon Assistant United

States Attorneys Christy Muncy and Tim Oakley on June 9, 2016.


/s/   Zenaida R. Lockard and Karen Savir
Zenaida R. Lockard  (KY Bar No. 93402)
Karen Savir (KY Bar No. 92002)
Assistant Federal Public Defenders

---

[8] Mr. Guy concurs with probation's recommendation that, pursuant to U.S.S.G. § 5G1.3(b), this sentence should run concurrently to his undischarged term of imprisonment with the state.  (PSR, ¶ 190).

11